UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

STEPHEN M. LEHMAN,

    Petitioner,

    v.      CAUSE NO.: 3:17-CV-940-JD-MGG

WARDEN,

    Respondent.

## OPINION AND ORDER

Stephen M. Lehman, a prisoner without a lawyer, filed a habeas corpus petition to challenge his conviction for dealing controlled substances under Cause No. 35D01-904-FA-63. Following a jury trial, on August 11, 2009, the Huntington Superior Court sentenced him as a habitual offender to forty-two years of incarceration.

## FACTUAL BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the State courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court of Appeals of Indiana summarized the evidence presented at trial:

> In August of 2008, Huntington City Police Detective Michael Slagel (Detective Slagel) worked with Charles Howard (Howard), a confidential informant. On August 5, 2008, Howard contacted Detective Slagel to inform the detective that he had a deal set up. Detective Slagel contacted other officers to help with the transaction and they all met with Howard at a predetermined meeting place. At the meeting place, Detective Slagel searched Howard and his vehicle and placed an electronic device on him. He also handed Howard $200 to purchase drugs.

Howard, followed by the officers, traveled to 626 Court Street in Huntington, Indiana. The officers saw Howard pull into the alley at the residence and then lost visual contact. However, Detective Slagel was able to hear the transaction on the audio device and recognized both Howard and Lehman's voice. Detective Slagel heard Howard and Lehman talk about weighing out different amounts of cocaine, and discuss a "ball," "powder," and "doing a line." Huntington City Police Detective Cory Boxell (Detective Boxell), who also monitored the transaction through the audio device, heard Lehman talk about his upcoming appointment with his probation officer. When the transaction was complete, Howard left the residence and drove to the meeting place while being followed by the officers. At the meeting place, Howard handed Detective Slagel a clear plastic bag containing a white powdery substance. This substance tested positive for cocaine.

On August 20, 2008, Detective Slagel received another call from Howard about setting up another deal with Lehman. Again, a meeting was set up at a predetermined place where Howard was searched. He was fitted with an electronic listening device and given money to buy drugs. Howard and the officers drove to Lehman's residence in separate vehicles. Howard pulled into the alley and Huntington City Police Detective Chad Hacker (Detective Hacker) saw Lehman walk up to Howard's vehicle. Detective Slagel and Officer Boxell, who were monitoring the audio device, heard Howard talk to Lehman about twenty milligram pills and thirty milligram pills. When the transaction was completed, Howard returned to the meeting place with the officers in tow and gave Detective Slagel a clear plastic bag with ten orange twenty-milligram Adderall capsules. In the fall of 2008, Howard died of a drug overdose.

On April 2, 2009, the State charged Lehman with Count I, dealing in cocaine, a Class A felony, I.C. § 35-48-4-1; and Count II, dealing in a schedule I, II, or III controlled substance, a Class A felony, I.C. § 35-48-4-2. The next day, the State amended this charging information by adding an habitual substance offender Count, I.C. § 35-50-2-10. On July 9 and 10, 2009, a jury trial was conducted. At the close of the evidence, the jury returned a guilty verdict on Counts I and II. Thereafter, Lehman pled guilty to the habitual substance offender charge. On August 11, 2009, during the sentencing hearing, the trial court sentenced Lehman to concurrent sentences of thirty-six years each on Counts I and II, and enhanced the sentence on Count I by six years because of the habitual substance adjudication. Lehman's aggregate sentence amounted to forty-two years.

ECF 6-5 at 2-4; *Lehman v. State*, 87 N.E.3d 61 (Ind. Ct. App. 2017).

Lehman argues that he is entitled to habeas relief on the basis that the trial court violated his rights under the Confrontation Clause by admitting two audio recordings of a deceased informant. He further argues that trial counsel was ineffective for having a conflict of interest, for failing to investigate the controlled buys, including their location and the amount of controlled substances, and for failing to present several witnesses. He also argues that appellate counsel was ineffective for failing to raise an argument under the Indiana Constitution and for failing to investigate the audio recordings of the deceased informant.[1]

## PROCEDURAL DEFAULT

Before considering the merits of a habeas petition, the court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). To avoid procedural default, a habeas petitioner must fully and fairly present his federal claims to the state courts. *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). Fair presentment "does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Brevik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (citing *Boyko*, 259 F.3d at 788). It does, however, require "the petitioner to assert his federal claim through one complete round

---

[1] Lehman argues that he is entitled to habeas relief on the basis that the Huntington Superior Court deprived him of a fair evidentiary hearing at the post-conviction relief stage. However, this argument does not present a cognizable basis for habeas relief because there is no constitutional right to post-conviction relief proceedings. *Murray v. Giarratano*, 492 U.S. 1, 10 (1989); *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987).

of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis*, 390 F.3d at 1025 (internal quotations and citations omitted). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Id.*

Lehman presented his Confrontation Clause claim to the Court of Appeals of Indiana and the Indiana Supreme Court on direct appeal. ECF 6-2; ECF 6-6. At the post-conviction relief stage, Lehman also properly exhausted his claims that trial counsel failed to represent him free from conflict, failed to investigate the controlled buys, including their location and the amount of controlled substances, and failed to call several witnesses. ECF 6-9; ECF 6-13. However, while Lehman raised ineffective assistance of appellate counsel claims before the Huntington Superior Court, he did not raise them on appeal. ECF 6-9. Lehman is thus procedurally barred from pursuing the ineffective assistance of appellate counsel claims on habeas review, and the court will not consider them on the merits.

## STANDARD OF REVIEW

"Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods,* 135 S. Ct. at 1376. Criminal defendants are entitled to a fair trial but not a perfect one. *Rose v. Clark*, 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

## ANALYSIS

### Right to Confront Witnesses

Lehman argues that the State court made an objectively unreasonable determination that the trial court's violation of the Confrontation Clause was harmless

5

error. The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him," which includes the right to cross examine such witnesses. *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). "Admitting a witness's out-of-court testimonial statements when that witness is available to testify violates the accused's Sixth Amendment right of confrontation, but not when those statements are offered for a purpose other than establishing the truth of the matter asserted." *United States v. Gaytan*, 649 F.3d 573, 579 (7th Cir. 2011). "[A] confidential informant's out-of-court statements are not hearsay if they are offered not for the truth but to put the defendant's statements in context or to make what he said and did in reaction to the informant's statements intelligible to the jury." *Id.* To obtain habeas relief, a petitioner must demonstrate that a violation of the Confrontation Clause had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

At trial, Lehman faced one charge of dealing in cocaine and one charge of dealing in a controlled substance. Trial Tr. 231. Four detectives testified about their participation in arranging the two controlled buys with a confidential informant and Lehman. Trial Tr. 243-85, 344-59, 366-73, 379-440. As part of the controlled buys, the detectives searched the informant's person and vehicle, escorted him to and from Lehman's residence, and provided him with a wireless audio transmitter that allowed them to listen to any drug transaction as it occurred. *Id.* During the course of the controlled buys, the informant purchased 3.47 grams of cocaine on August 5, 2008, and ten Adderall pills on August 20, 2008. *Id.* The audio transmissions of the controlled buys

were recorded and included the informant's discussions with Detective Slagel before and after the controlled buys. *Id.* The detectives were all familiar with the voices of the informant and Lehman and were able to identify them from the audio recordings. *Id.* The trial court admitted these recordings into evidence over trial counsel's objection that he was unable to cross-examine the informant, who was deceased at the time of trial. *Id.* at 385-99, 430-34. Additionally, Detective Hacker testified that, from his location during the second controlled buy, he observed Lehman walk from the residence to the informant's vehicle. *Id.* at 427-28. The jury convicted Lehman on both counts. *Id.* at 487.

On direct appeal, the Court of Appeals of Indiana found that the audio recordings of the informant were not introduced for the truth of the matter asserted but to provide context for Lehman's statements. ECF 6-5 at 5-7. It further found that the descriptions of the controlled buys to Detective Slagel before and after the controlled buys were testimonial in nature and that the admission of these portions of the audio recordings violated Lehman's rights under the Confrontation Clause. ECF 6-5 at 7-11. However, the appellate court affirmed the conviction on the basis that the violation was harmless error based on the testimony of the detectives who participated in the controlled buys. *Id.*

After reviewing the record, the court cannot find that the State court made an unreasonable determination on his claim that the audio recordings violated his right to confront witnesses. It was not unreasonable for the appellate court to determine that the audio recordings of the informant's statements during the controlled buys did not violate the Confrontation Clause because these statements were introduced to provide

7

context to Lehman's statements rather than to prove the truth of the matters asserted. Without the informant's statements, Lehman's statements during the recordings would have made little sense to the jury. Further, as articulated by the appellate court, the informant's descriptions of the controlled buys before and after they occurred were entirely consistent with the testimony of the detectives and the non-hearsay portions of the audio recordings and by itself provided little, if any, probative value to the prosecution's case. As a result, the appellate court did not unreasonably determine that the descriptions of the controlled buys were harmless error. *See e.g., United States v. Walker*, 673 F.3d 649, 659 (7th Cir. 2012) (harmless error where the informant's statements were duplicative of recorded statements of criminal defendants); *United States v. Adams,* 628 F.3d 407, 418 (7th Cir. 2010) (harmless error where the informant's statements were fully and independently confirmed by officer's observations). Therefore, the claim that the trial court violated his rights under the Confrontation Clause is not a basis for habeas relief.

Ineffective Assistance of Trial Counsel - Conflict of Interest

Lehman argues that he is entitled to habeas relief because trial counsel was ineffective for having a conflict of interest due to a breakdown of the attorney-client relationship.

> There are two ways to assert a claim based on counsel's conflict of interest. One, under *Strickland v. Washington*, 466 U.S. 668 (1984), the petitioner may show that his attorney had a potential conflict of interest and that the potential conflict prejudiced his defense; or two, the petitioner may proceed under *Cuyler v. Sullivan*, 446 U.S. 335 (1980), where he must establish a violation by showing that an actual conflict of interest adversely affected his lawyer's performance.

8

> Proceeding under *Sullivan* places a lighter burden on the defendant than *Strickland* because demonstrating an adverse effect is significantly easier than showing prejudice. This more lenient standard applies because the requirements in *Sullivan* reflect that prejudice is presumed if the petitioner establishes both that his counsel had an actual conflict and that the conflict had an adverse effect on counsel's performance.

*Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004). "An actual conflict of interest results if the defense attorney was required to make a choice advancing his own interests to the detriment of his client's interests." *Stoia v. United States*, 22 F.3d 766, 771 (7th Cir. 1994).

At a pretrial hearing, on May 26, 2009, trial counsel asked the trial court to be excused from representing Lehman as follows:

> Trial Counsel: It is my understanding that he does not want me to represent him on that case. I think that our relationship as attorney-client has deteriorated to the point that Mr. Lehman does not and nor do I believe that I can effectively represent him at this point.
>
> The Court: But there is no conflict?
>
> Trial Counsel: I don't believe there is.
>
> Lehman: Yes.
>
> Trial Counsel: I don't believe there is a conflict, but I don't know what he thinks.

Trial Tr. 33. Lehman told the trial court that there was a conflict because trial counsel did nothing on his behalf; that trial counsel attempted to hide the fact that the confidential informant was deceased; and that trial counsel advised him to accept a plea deal for a fifty-year sentence. *Id.* at 33-37. The trial court found this explanation inadequate and ordered trial counsel to remain on the case. *Id.*

9

On May 29, 2009, the trial court held a hearing on Lehman's motion for a change of counsel. *Id.* at 49-62. Lehman explained that he wanted a change of counsel because he did not believe trial counsel should advise him to accept a plea deal that would "ruin [his] life in any way possible" and that trial counsel asked him about the plea deal even after Lehman had expressed his disinterest. *Id.* at 50-51. He explained that he wanted to file a motion to dismiss for lack of probable cause. *Id.* at 51-52. The trial court responded that the prosecution had already established probable cause and that evidentiary deficiencies did not amount to a conflict of interest. *Id.* Lehman also stated that trial counsel attempted to hide the fact that the confidential informant was deceased. *Id.* at 55-56. The trial court responded that Lehman was only aware of this fact because trial counsel had reviewed the prosecution's evidence with him. *Id.* at 56. Trial counsel reaffirmed his willingness to represent Lehman, and the trial court denied the motion. *Id.* at 59-60.

At a post-conviction evidentiary hearing, trial counsel testified that, while there was some breakdown in the attorney-client relationship, he was able to work with Lehman to prepare for trial. PCR Tr., Vol. 3, 108-09. The Huntington Superior Court denied Lehman's claim that trial counsel was ineffective for having a conflict of interest. ECF 6-9 at 64. On appeal, the Court of Appeals of Indiana considered trial counsel's testimony that, despite his initial reservations, trial counsel and Lehman mended their attorney-client relationship and that he effectively represented Lehman at trial. ECF 6-12 at 9-10. The appellate court affirmed the lower court, finding that Lehman had failed to demonstrate deficient performance or a reasonable likelihood that the outcome

would have been different absent the temporary breakdown of the attorney-client relationship. *Id.*

After reviewing the record, the court cannot find that the State court made an unreasonable determination regarding trial counsel's conflict of interest. To start, Lehman does not describe a single instance in which trial counsel advanced his own interests over those of Lehman. Further, Lehman does not explain how the alleged conflict of interest adversely affected trial counsel's performance or prejudiced his criminal case. Nor do the pretrial transcripts suggest a conflict of interest; while Lehman disagreed with trial counsel's advice, nothing in the record suggests that trial counsel prioritized his or anyone else's interests above Lehman's interests during the course of representation. Therefore, the claim that trial counsel had a conflict of interest is not a basis for habeas relief.

<u>Ineffective Assistance of Trial Counsel - Failure to Investigate</u>

Lehman argues that he is entitled to habeas relief because trial counsel failed to investigate what occurred during the controlled buys, which he believes were conducted inappropriately. He argues that trial counsel failed to investigate the distance of the controlled buys to the nearby park or the presence of children and that trial counsel should not have stipulated as to the amount of controlled substances obtained from controlled buys. He contends that these failures prejudiced him because affirmative findings on these issues elevated the charges to a Class A felony.

To prevail on an ineffective assistance of counsel claim in the State courts, a petitioner must show that counsel's performance was deficient and that the deficient

11

performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In assessing prejudice under *Strickland* "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). However, "[o]n habeas review, [the] inquiry is now whether the state court unreasonably applied *Strickland*." *McNary v. Lemke*, 708 F.3d 905, 914 (7th Cir. 2013). "Given this high standard, even 'egregious' failures of counsel do not always warrant relief." *Id.*

At the post-conviction relief stage, the Court of Appeals of Indiana observed that Lehman had not explained what trial counsel should have done to challenge the prosecution's case as it related to the controlled buys. ECF 6-12 at 11-12. The appellate court noted that Lehman's residence where the controlled buys occurred was located entirely within one thousand feet of the nearby park and that Lehman offered nothing to suggest that the survey used at trial was inaccurate. *Id.* at 12-14. It further noted that his residence was located in a neighborhood; that the controlled buys took place at night; and that the likelihood children were in the neighborhood when the controlled buys took place was thus very high. *Id.* It noted that Lehman offered no evidence to suggest that the stipulated weight of the controlled substances was inaccurate. *Id.* at 14.

On this basis, the appellate court found that Lehman had not demonstrated deficient performance or prejudice and affirmed the decision of the Huntington Superior Court. *Id.* at 10-14.

After reviewing the record, the court cannot find that the State court made an unreasonable determination regarding trial counsel's investigative efforts. Notably, Lehman cites solely to the trial transcript in his attempt to demonstrate that the controlled buys were conducted inappropriately. ECF 14 at 10. Considering that these deficiencies were presented to the jury, it is unclear how trial counsel could have prejudiced Lehman's case by failing to investigate them. Further, the court agrees with the State court that Lehman wholly failed to demonstrate that he was prejudiced by trial counsel's failure to investigate the location of the controlled buys or the amount of controlled substances. Lehman has not shown nor does he even argue that the evidence introduced in connection with these issues was inaccurate and thus has not shown prejudice. Therefore, the claim that trial counsel failed to investigate the controlled buys is not a basis for habeas relief.

<u>Ineffective Assistance of Trial Counsel - Failure to Call Witnesses</u>

Lehman argues that he is entitled to habeas relief because trial counsel failed to present several potential witnesses. At a post-conviction evidentiary hearing, Lehman presented photographs of his former residence taken by Scott Thornsberry, his brother, to demonstrate that Detective Hacker could not have identified Lehman from his location during the controlled buys. PCR Tr., Vol. 2, 33-38. However, the court declined to admit these photographs into evidence because they were taken in 2016 and not near

13

the time of the controlled buys. *Id.* Dustin Johnson testified that he lived with Lehman during the relevant time and never saw Lehman use or deal drugs. *Id.* at 47-48. He testified that the confidential informant used and sold drugs. *Id.* at 49-50. Johnson was on parole at the time for selling drugs. *Id.* at 48. He knew that Lehman was caught with marijuana in October 2008 and was not certain whether he was at the residence during the time of the controlled buys. *Id.* at 55-56. Lehman presented his mother as a witness to demonstrate that it was not his voice on the audio recordings, and she testified that she was familiar with his voice. *Id.* at 26-27. Lehman also introduced an affidavit from Jessica Lautzenhiser, his former girlfriend, in which she attests that, on August 5, 2008, she was at the residence and saw the confidential informant meet with Joshua Karst. PCR App., Vol. 3, 59.

Jay Poe, a county surveyor, testified that he could not determine the distance between the controlled buy and the nearby park on the map presented by Lehman and thus would not have stipulated to the distance based on that map. PCR Tr., Vol. 2, 77-78. The State then introduced a map similar to the one used at trial to show that the map presented by Lehman did not include the yellow line demarcating the one thousand-foot radius from the park. *Id.* at 85-86. Gina Wenger, human resources manager for Lehman's former employer, testified that, as of August 5, 2008, Lehman regularly worked the second shift but that she could not determine whether Lehman worked specifically on August 5, 2008. *Id.* at 122-24, 130. Trial counsel testified that he spoke with Lehman's former employer but could not confirm whether Lehman was working during the controlled buys. PCR Tr., Vol. 2, 110. He also testified that his strategy was to

14

cross-examine the detectives to discredit their testimony and the validity of the controlled buys. *Id.* at 91, 105-06. He also advised Lehman to refrain from testifying due to his distinctive voice. *Id.*

On appeal, the Court of Appeals of Indiana found that Lehman had not demonstrated deficient performance, noting that trial counsel's testimony indicated that he adequately investigated whether Lehman's employment could establish an alibi. ECF 6-12 at 17. The appellate court further reasoned that it would have been reasonable for trial counsel to conclude that the proposed witnesses were not credible or that their testimony would have been speculative. *Id.* at 17-18.

After reviewing the record, the court cannot find that the State court made an unreasonable determination regarding trial counsel's decision not to present witnesses. His mother, his brother, his former roommate, and former girlfriend would have faced substantial credibility concerns considering their close relationship with Lehman. Moreover, the State court correctly assessed the probative value of the proposed testimony. While the former roommate's and former girlfriend's testimony had some value as they were presented as direct witnesses to the controlled buys, the prosecution likely could have discredited the mother's testimony regarding Lehman's voice given the distinct nature of his voice, and his brother's photographs were not admissible evidence. Further, Poe did not confirm that the stipulated distance from the residence to the part was incorrect, and Wenger did not confirm that Lehman worked the second shift on August 5, 2008. Additionally, four detectives testified that they were able to identify Lehman during the controlled buys because they recognized his distinct voice

15

through the wire transmission, and Detective Hacker testified that he saw Lehman during the second controlled buy. Trial Tr. 243-85, 344-59, 366-73, 379-440. Given the strength of this identification, it seems unlikely that testimony attempting to discredit it would have made a difference in the outcome of the case. Therefore, the claim that trial counsel failed to present witnesses is not a basis for habeas relief.

## CERTIFICATE OF APPEALABILITY

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this opinion for denying habeas corpus relief, there is no basis for encouraging Lehman to proceed further.

For these reasons, the court:

(1) DENIES the habeas corpus petition (ECF 1);

(2) DENIES a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and

(3) DIRECTS the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED on April 29, 2019

/s/ JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT